Thomas N. McCormick (SBN 325537)
*tnmccormick@vorys.com*
Christopher M. Lapidus (SBN 316005)
*cmlapidus@vorys.com*
VORYS, SATER, SEYMOUR AND PEASE LLP
4675 MacArthur Court, Suite 700
Newport Beach, CA 92660
Telephone:  (949) 526-7903

*Attorneys for Plaintiff Fifth Third Bank,
National Association*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| FIFTH THIRD BANK, NATIONAL ASSOCIATION, | Case No. 8:22-cv-00213 |
| Plaintiff, | **FIFTH THIRD BANK, NATIONAL ASSOCIATION'S COMPLAINT FOR:** |
| v. | 1.  Breach of Contract; |
| JUDLAU CONTRACTING, INC. and OHLA USA, INC., | 2.  Declaratory Judgment; and |
| Defendants. | 3.  Indemnification |

For its Complaint against Judlau Contracting, Inc. ("Judlau") and OHLA USA, Inc. ("OHLA USA"), Fifth Third Bank, National Association ("Fifth Third"), states as follows:

## Parties

1.      Fifth Third is a national bank incorporated in Ohio with its principal place of business in Cincinnati, Ohio.

2.      Celtic Commercial Finance ("Celtic"), the successor of Celtic Leasing Corp., is a division of Fifth Third that specializes in equipment leasing.  Celtic's principal place of business is in Irvine, California.  In 2012, Celtic was acquired by MB Financial Bank.  MB Financial Bank later merged with Fifth Third, at which point Celtic became a division of Fifth Third.  For sake of simplicity, Celtic is referred to as Fifth Third in this Complaint.

3.      Judlau is a construction company incorporated in New York with its principal place of business at 26-15 Ulmer St., College Point, NY 11354.  It is a wholly-owned subsidiary of OHLA USA.

4.      OHLA USA is the United States subsidiary of Obrascón Huarte Lain, a global infrastructure group.  OHLA USA is a Delaware corporation with its principal place of business at 26-15 Ulmer St., College Point, NY 11354.

## Jurisdiction and Venue

5.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Fifth Third is a citizen of a different state than Judlau and OHLA USA, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the governing Master Lease was entered into and performed in Orange County, California.

///

///

///

## Facts

### *The Master Lease*

7.    In January 2017, Fifth Third, Judlau, and OHLA USA entered into a "Master Lease."

8.    A true and accurate copy of the Master Lease is attached to this Complaint as **Exhibit 1**.

9.    Under Addendum "1" to the Master Lease, Judlau and OHLA USA are defined as "Lessee."  The provision makes clear that "[e]ach reference to the term 'Lessee' shall be deemed to refer to each of Judlau Contracting, Inc. and OHLA USA, Inc. . . . .  The obligations of Judlau Contracting, Inc. and OHLA USA, Inc. are joint and several.  Each representation, warranty, covenant and agreement made by Lessee shall be deemed to have been made by each such party."  Thus, this Complaint refers to Judlau and OHLA USA collectively as "Lessee."

10.    The Master Lease governs "the items of tangible and/or intangible property (collectively called 'Equipment' and individually called 'Item') described on any Lease Schedule now or in the future" to be leased by Fifth Third, as lessor, to Lessee.  "[T]itle to the Equipment shall remain in Lessor [Fifth Third]."

11.    Section 3 of the Master Lease describes how to calculate the "Base Term" for any Lease Schedule and sets forth Lessee's options when the Base Term expires.

12.    Specifically, a Lease Schedule "may be terminated by Lessee as of the last day of the Base Term by giving Lessor [Fifth Third] at least one month prior written notice of such termination."  The written notice "shall stipulate whether Lessee chooses to purchase the Equipment or renew the Lease as provided in Section 6. Fair Market Value Purchase Option, or return the Equipment as provided in Section 7. Return of Equipment."  Unless and until such written notice is provided, the Lease Schedule "shall automatically be extended in successive one

month intervals ['Extension Term(s)'] at the rental amount in effect at the end of the Base Term."

13.     Section 6 of the Master Lease explains how Fair Market Value ("FMV") is calculated "[i]n the event Lessee notifies Lessor it elects to purchase Equipment":

> In the event Lessee notifies Lessor it elects to purchase Equipment, the purchase price shall be the Fair Market Value ("FMV") which is herein defined as the total cost it would take to replace the Equipment on an in-place, installed basis (including all current costs and expenses for the purchase, assembly, delivery, installation, consulting, training, site preparation and any other services that would he required to render such Equipment fully installed, ready and acceptable for use by an end user). If Lessor and Lessee cannot agree on the FMV, then the final, binding and conclusive purchase price shall be determined by the average of two Senior Appraisers accredited by the American. Society of Appraisers, with one chosen by Lessor and one by Lessee, both using the definition of FMV hereunder in determining their purchase price . . . .

14.     Section 7 of the Master Lease sets forth Lessee's obligations if it elects to return Equipment when the Base or Extension Term of any Lease Schedule expires.  If Lessee elects this option, it "shall immediately discontinue all use of the Equipment and at its own cost, de-install, pack and ship the Equipment to location(s) within the United States, ***all in accordance with instructions provided by Lessor*** [Fifth Third] . . . ."  (emphasis added).  Additionally, "Lessee shall take actions necessary to ensure that the Equipment will be eligible for the best standard Manufacturer Maintenance Contract and shall pay all fees, charges and expenses for maintenance certification or recertification by the Manufacturer and for all costs for repair or replace of damaged Equipment."  Until Lessee has complied with all of the requirements of this Section, rent payments will continue on a month to month basis

at the monthly rent delineated on the Schedule."  Furthermore, "Lessee shall allow Lessor to inspect, at Lessee's cost, all of Lessee's locations to ensure compliance . . . ."

15.    Under Section 17 of the Master Lease, "[t]he occurrence of any of the following shall constitute an event of default . . . ('Event of Default'): (a) Lessee fails to pay when due any installment of rent or any other amount due hereunder and such failure continues for a period of ten days after receipt of written notice thereof"; and "(d) Lessee fails to observe or perform any other covenant, condition or obligation to be observed or performed by it under this Lease and such failure continues for a period of fifteen days after receipt of written notice thereof."

16.    The Master Lease gives Fifth Third several options when an Event of Default occurs.  "[I]n addition to all available remedies it may have at law or in equity," Fifth Third may "do any or all of the following: (a) proceed, by appropriate court action, to enforce performance by Lessee of the applicable covenants of this Lease and to recover damages for the breach thereof"; and "(e) recover all unpaid amounts then due and owing including applicable Late Charges . . . , without any presentment, demand, protest or further notice (all of which are expressly waived by Lessee)."

17.    Late Charges, also called "interest on past due amount," are "equal to 5% of the amount overdue each month or the highest lawful charge, whichever is less."

18.    Under Section 13 of the Master Lease, Lessee agreed to "indemnify, defend, protect, save and hold harmless [Fifth Third], its employees, officers, directors, agents, assigns and successors from and against any and all claims, actions, costs, expenses (*including reasonable attorneys' fees*), damages (including any interruption in service, loss of business or other consequential damages), liabilities, penalties, losses, obligations, injuries, demands and liens . . .  of any kind

or nature arising out of, connected with, relating to or resulting from the . . . lease . . . of any Item or Items of Equipment . . . ."  (emphasis added).

### *The Relevant Schedules*

19.    Over the last several years, Fifth Third and Lessee have entered into various Lease Schedules that are governed by the Master Lease.

20.    For purpose of this Complaint, Schedules 2, 5, 6, and 7 are relevant.

21.    Fifth Third and Lessee entered into Schedule 2 in June 2017.

22.    A true and accurate copy of Schedule 2 is attached to this Complaint as **Exhibit 2**.

23.    In Schedule 2, Lessee agreed to rent certain construction equipment from Fifth Third at the rate of $11,138.00 per month, paid quarterly, for a period of 60 months.  Fifth Third and Lessee later agreed to reduce rent to $3,907.00 per month, paid quarterly.

24.    Rent is due on the first day of each quarter.

25.    Addendum A to Schedule 2 modified Paragraph 3 of the Master Lease exclusively as to Schedule 2 to give Lessee the option to "purchase all of Lessor's rights, title and interest in and to the Equipment subject to the Schedule for $1.00."

26.    Addendum A to Schedule 2 states that it is ***"limited" to Schedule 2*** and ***applies "with respect only to" Schedule 2***.

27.    Fifth Third and Lessee entered into Schedule 5 in June 2019.

28.    A true and accurate copy of Schedule 5 is attached to this Complaint as **Exhibit 3**.

29.    In Schedule 5, Lessee agreed to rent certain construction equipment from Fifth Third at the rate of $55,347.00 per month, paid quarterly, for a period of 30 months.

30.    Rent is due on the first day of each quarter.

31.    Unlike Schedule 2, there are no addendums to Schedule 5 that modify Paragraph 3 of the Master Lease.

32.    Fifth Third and Lessee entered into Schedule 6 in August 2019.

33.    A true and accurate copy of Schedule 6 is attached to this Complaint as **Exhibit 4**.

34.    In Schedule 6, Lessee agreed to rent certain construction equipment from Fifth Third at the rate of $30,318.00 per month, paid quarterly, for a period of 30 months.

35.    Rent is due on the first day of each quarter.

36.    Unlike Schedule 2, there are no addendums to Schedule 6 that modify Paragraph 3 of the Master Lease.

37.    Fifth Third and Lessee entered into Schedule 7 in December 2019.

38.    A true and accurate copy of Schedule 7 is attached to this Complaint as **Exhibit 5**.

39.    In Schedule 7, Lessee agreed to rent certain construction equipment from Fifth Third at the rate of $31,002.00 per month, paid quarterly, for a period of 30 months.

40.    Rent is due on the first day of each quarter, although the Schedule is "off quarter," with rent due March 1, June 1, September 1, and December 1, as opposed to the standard January 1, April 1, July 1, and October 1.

41.    Unlike Schedule 2, there are no addendums to Schedule 7 that modify paragraph 3 of the Master Lease.

## Count 1

### *(Breach of Contract – Schedule 2)*

### **(Against Lessee)**

42.    Fifth Third incorporates the allegations in the preceding paragraphs by reference.

43.    The Master Lease and Schedule 2 are binding and enforceable contracts between Fifth Third and Lessee.

44.    Fifth Third has performed all of its obligations under the Master Lease and Schedule 2.

45.    Lessee has breached its obligations under the Master Lease and Schedule 2.

46.    The Base Term of Schedule 2 ends on June 30, 2022.

47.    Lessee has failed to pay rent due and owing under the Master Lease and Schedule 2 in the amount of $11,721.00.

48.    On November 1, 2021, Fifth Third notified Lessee of its failure to pay rent due and owing.

49.    A true and accurate copy of Fifth Third's November 1, 2021 notice is attached as **Exhibit 6** to this Complaint.

50.    To date, Lessee has failed to pay the outstanding rent, which is an Event of Default under Section 17 of the Master Lease because Lessee's failure to pay rent "continue[d] for a period of ten days after receipt of written notice" from Fifth Third.

51.    Lessee also owes Fifth Third $175.82 in interest on this past due amount.

52.    On January 31, 2022, Fifth Third notified Lessee of the interest due and owing.

53.    A true and accurate copy of Fifth Third's January 31, 2022 notice is attached to this Complaint as **Exhibit 7**.

54.    As a result of Lessee's breach, Fifth Third has incurred monetary damages.

## Count 2

### *(Breach of Contract – Schedule 5)*

### **(Against Lessee)**

55.    Fifth Third incorporates the allegations in the preceding paragraphs by reference.

56.     The Master Lease and Schedule 5 are binding and enforceable contracts between Fifth Third and Lessee.

57.     Fifth Third has performed all of its obligations under the Master Lease and Schedule 5.

58.     Lessee has breached its obligations under the Master Lease and Schedule 5.

59.     The Base Term of Schedule 5 ended on December 31, 2021.

60.     On November 8, 2021, Lessee sent Fifth Third a letter, purporting to terminate Schedule 5 and require Fifth Third to make "arrangement to remove the equipment on the schedule from its current location on or before November 30, 2021."

61.     A true and accurate copy of Lessee's November 8, 2021 letter is attached to this Complaint as **Exhibit 8**.

62.     Lessee's November 8, 2021 letter violates Sections 3 and 7 of the Master Lease.  Sections 3 and 7 set forth requirements that Lessee must meet to properly return the equipment that it leased under Schedule 5.  Section 7 makes clear that the Lessee must return the equipment "in accordance with instructions provided by" Fifth Third.  And Section 7 makes clear that until Lessee properly returns the equipment, "rent payments will continue on a month to month basis at the monthly rent delineated on the Schedule."

63.     Fifth Third sent Lessee return instructions for the Schedule 5 equipment on December 1, 2021.

64.     A true and accurate copy of the email from Fifth Third to Lessee with the return instructions and past due invoices is attached to this Complaint as **Exhibit 9**.

65.     To date, Lessee has failed to comply with the return instructions or Sections 3 and 7 of the Master Lease regarding return of the Schedule 5 equipment.

66.     Consistent with Section 7 of the Master Lease, Fifth Third has continued to charge Lessee monthly rent.

67.     Lessee has failed to pay monthly rent due and owing.

68.     On November 1, 2021, Fifth Third notified Lessee of its failure to pay rent due and owing.

69.     A true and accurate copy of Fifth Third's November 1, 2021 notice is attached as **Exhibit 6** to this Complaint.

70.     As stated in Fifth Third's notice, for the period October 1, 2021 to December 31, 2021, Lessee failed to pay $180,777.14.

71.     To date, Lessee has failed to pay this outstanding rent, which is an Event of Default under Section 17 of the Master Lease because Lessee's failure to pay "continue[d] for a period of ten days after receipt of written notice" from Fifth Third.

72.     On January 31, 2022, Fifth Third notified Lessee of its failure to pay additional return due and owing under the Master Lease and Schedule 5.  Fifth Third also notified Lessee that it owed Fifth Third interest on past due rent.

73.     A true and accurate copy of Fifth Third's January 31, 2022 notice regarding Schedule 5 is attached as **Exhibit 7** to this Complaint.

74.     As stated in Fifth Third's notice, for the period of January 1, 2022 to January 31, 2022, Lessee failed to pay $60,259.05.   Lessee also owes $2,490.62 in interest on past due rent.

75.     To date, Lessee has failed to pay this outstanding rent and interest, which is an Event of Default under Section 17 of the Master Lease because Lessee's failure to pay "continue[d] for a period of ten days after receipt of written notice" from Fifth Third.

76.     As a result of Lessee's breach, Fifth Third has incurred monetary damages.

77.    Until Lessee properly returns the Schedule 5 equipment or renews the lease, as set forth in Section 7 of the Master Lease, or elects to purchase the Schedule 5 equipment for FMV, as set forth in Section 6 of the Master Lease, monthly rent and interest will continue to accrue.

<u>**Count 3**</u>

***(Breach of Contract – Schedule 6)***

**(Against Lessee)**

78.    Fifth Third incorporates the allegations in the preceding paragraphs by reference.

79.    The Master Lease and Schedule 6 are binding and enforceable contracts between Fifth Third and Lessee.

80.    Fifth Third has performed all of its obligations under the Master Lease and Schedule 6.

81.    Lessee has breached its obligations under the Master Lease and Schedule 6.

82.    The Base Term of Schedule 6 ends on March 31, 2022.

83.    Fifth Third has charged Lessee rent for the Schedule 6 equipment as set forth in the Master Lease and Schedule 6.

84.    Lessee has failed to pay to rent due and owing.

85.    On November 1, 2021, Fifth Third notified Lessee of its failure to pay rent due and owing.

86.    A true and accurate copy of Fifth Third's November 1, 2021 notice is attached as **Exhibit 6** to this Complaint.

87.    As stated in Fifth Third's notice, for the period October 1, 2021 to December 31, 2021, Lessee failed to pay $99,026.17.

88.    To date, Lessee has failed to pay this outstanding rent, which is an Event of Default under Section 17 of the Master Lease because Lessee's failure to

pay "continue[d] for a period of ten days after receipt of written notice" from Fifth Third.

89.    On January 31, 2022, Fifth Third notified Lessee of its failure to pay additional rent due and owing under the Master Lease and Schedule 6.  Fifth Third also notified Lessee that it owed Fifth Third interest on past due rent.

90.    A true and accurate copy of Fifth Third's January 31, 2022 notice is attached as **Exhibit 7** to this Complaint.

91.    As stated in Fifth Third's notice, for the period of January 1, 2022 to March 31, 2022, Lessee failed to pay $99,026.17.  Lessee also owes $1,364.31 in interest on past due rent.

92.    To date, Lessee has failed to pay this outstanding rent and interest, which is an Event of Default under Section 17 of the Master Lease because Lessee's failure to pay "continue[d] for a period of ten days after receipt of written notice" from Fifth Third.

93.    As a result of Lessee's breach, Fifth Third has incurred monetary damages.

## <u>Count 5</u>

### *(Declaratory Judgment – 28 U.S.C. § 2201)*

### **(Against Lessee)**

94.    Fifth Third incorporates the allegations in the preceding paragraphs by reference.

95.    On December 9, 2021, Lessee, through counsel, wrote to Fifth Third about the Schedules.

96.    A true and accurate copy of the letter is attached as **Exhibit 10** to this Complaint.

97.    In the December 2021 letter, Lessee argued that it had the right to purchase the equipment leased under Schedules 6 and 7 for $1.

98.     Fifth Third advised Lessee that it was incorrect, and that there was no $1 purchase option in these Schedules.  Fifth Third also advised Lessee that it would continue to charge Lessee monthly rent until Lessee properly elected an end-of-term option as set forth in Section 3 of the Master Lease.

99.     On January 28, 2022, Lessee's Chief Financial Officer wrote to Fifth Third and purported to purchase the equipment leased under Schedule 6 for $1.

100.    A true and accurate copy of the January 28, 2022 letter is attached to this Complaint as **Exhibit 11.**

101.    Fifth Third again advised Lessee that it was incorrect, and that there was no $1 purchase option in Schedule 6.  Fifth Third also advised Lessee that it would continue to charge Lessee monthly rent until Lessee properly elected an end-of-term option as set forth in Section 3 of the Master Lease.

102.    Lessee as refused to pay rent due and owing under Schedules 6 and 7, presumably based on its incorrect assertion that it can purchase the equipment leased under these Schedules for $1.

103.    A justiciable controversy exists regarding the rights, liabilities, and obligations of the parties under the Master Lease and Schedules 6 and 7.

104.    Fifth Third requests a declaration from this Court that Schedules 6 and 7 contain no $1 purchase option, that Lessee's only end-of-term options are set forth in the Master Lease, and that Lessee owes Fifth Third monthly rent until it properly elects and completes one of those options.

## <u>Count 6</u>

### (*Indemnification*)

### **(Against Lessee)**

105.    Fifth Third incorporates the allegations in the preceding paragraphs by reference.

106.    The Master Lease is a binding and enforceable contract between Fifth Third and Lessee.

107.  Fifth Third has performed all of its obligations under the Master Lease. Section 13 of the Master Lease requires Lessee to indemnify Fifth Third for all costs, expenses (including reasonable attorney fees), and damages (including any interruption in service, loss of business or other consequential damages) incurred by Fifth Third arising out of, connected with, relating to or resulting from the lease of any equipment.

108.  As a result of Lessee's breaches of the Master Lease and relevant Schedules, Fifth Third has incurred—and will continue to incur—costs, expenses, and damages, including attorney fees, for which Lessee must indemnify Fifth Third.

## **Prayer**

**WHEREFORE**, Fifth Third respectfully requests as follows:

1.    That the Court enter judgment in its favor;

2.    That the Court award it monetary damages in amount to be proven at trial;

3.    That the Court determine and declare that Schedules 6 and 7 contain no $1 purchase option, that Lessee's only end-of-term options are set forth in the Master Lease, and that Lessee owes Fifth Third monthly rent until it properly elects and completes one of those options.

4.    That Fifth Third be awarded its costs and expenses, including reasonable attorney fees expended herein; and

5.    That Fifth Third be awarded any other relief that the Court deems just and proper.

Dated:  February 10, 2022

**VORYS, SATER, SEYMOUR AND PEASE LLP**


*/s/ Christopher M. Lapidus*
Christopher M. Lapidus
*Attorneys for Plaintiff*
*Fifth Third Bank, National Association*